on the dock to 15 5 40 people in the state of Illinois, the Darcy L. Frederick with the Department of Police. I'm sorry, Council. What is your name? Yes, John. And Neiman. Yes. Okay. All right. No, we don't. I think we can proceed. Come on, Mr P. S. J. You can proceed. Thank you. Thank you. May it please the court. My name is Frank. Yes, Jack and I represent the appellant. The Department of Illinois State Police. This appeal arises from the circuit court order directing the department to issue a full card to the appellee Darcy Frederick and the subsequent denial of the department's motion to reconsider and vacate that order. The court's order directing the department to issue Frederick a void card should be vacated because the circuit court did not have subject matter jurisdiction. And additionally, even if the court did have jurisdiction, its order should be reversed because Frederick may not obtain relief from the prior revocation of his void card under Section 10 of the Act, where he is prohibited from possessing a void card or possessing a firearm, excuse me, by federal law. Initially, with regard to the threshold issue of jurisdiction, the court did not have subject matter jurisdiction here because Frederick was required to file his Section 10 petition with the director of state police and not the court. But isn't the statute worded in terms of based on? It doesn't use the word conviction. Correct, Your Honor. And so that isn't that sufficient to allow what happened here? Well, that distinction came up in the Miller case. And in Miller, the court held that where a void denial or revocation is based on a federal prohibition, which is then which is in turn based on a conviction or in that case, it was just a charge. You look at the underlying offense and because and in this case, the offense was misdemeanor battery. And under Section 8, there's a long list of different offenses under which if the void revocation is based on one of those offenses, then the petition must be filed to the court. Otherwise, if it's based on any other reason, then it is to be filed with the state police. And so here, battery or misdemeanor battery, which is the underlying offense, is not one of those listed offenses in Section 10A. And therefore, Frederick was required to file his petition with the director of state police. And now if the director of state police then denied Frederick's Section 10 petition, he would then be able to obtain judicial review of that decision pursuant to Section 11 of the act, which provides that that final administrative decisions may be reviewed under the administrative review law. So is that under the 2010 version? That is under both the 2011 and the 2013 versions of the statute. The January 1, 2013 amendments did not affect that part of Section 10. The amendment merely added subsection C4 to Section 10C and added the final sentence to Section 10B. But is there any real dispute about the battery conviction that it fits the federal definition of a crime of domestic violence? I don't believe there is much of a dispute. In Frederick's response brief, he sort of talked about, highlighted how it, whether or not something can be termed battery in one case and domestic violence in another. In this case, he, Frederick, pled guilty to the state offense of misdemeanor battery. And then under Section 922G9 of the gun control, the Federal Gun Control Act, a person who has been convicted of a misdemeanor crime of domestic violence is prohibited from processing a firearm. And then the term misdemeanor crime of domestic violence is defined in Section 921A33A. And then the United States Supreme Court, in the Hayes case, really clarified the definition of misdemeanor crime of domestic violence. And what the Hayes court said is that a misdemeanor crime of domestic violence must, one, be a misdemeanor. Two, it must has as an element the use of force. And then three, it must be committed by a person who has a specified domestic relationship with the victim. And the victim of the battery in this case was a woman Mr. Frederick was living with, correct? That he had just previously lived with. In the past. Yes. And that definition, because that definition does include a victim who has cohabitated with the person as a person similarly situated to a spouse. And then further in the Hayes decision, the court specified that the existence of a domestic relationship need not be an element of the underlying offense. And so that is how you can have a situation as we have here where something that is just a general battery under Illinois law qualifies as a crime of domestic violence under federal law. And in fact, the Hayes court explained that Congress specifically intended for this to happen because at the time that this portion of the Gun Control Act was enacted, only one-third, I think it was one-third of states even had specific offenses for domestic battery. And oftentimes people would be convicted under general battery statutes even when the underlying facts would have established a domestic battery. So Congress wanted to have an expansive reach of this definition to include situations just as here where the state conviction was for general battery but the underlying facts established the existence of a domestic relationship. Did the defendant here have a, I call him a defendant because he filed this in his criminal case for some reason, but did he have a Tennessee hearing before the trial court? The trial court did conduct a hearing where argument was presented. And made Tennessee findings, correct? Yes. The court's order is specifically based upon findings under subsection C1, C2, and C3. The court did not make any mention of subsection C4 which deals with whether or not Frederick was federally prohibited from owning and possessing a firearm. Justice Carmeier says that that Tennessee hearing removes that federal bar. Yes. Justice Carmeier and the three justices in the quorum came, did reach that conclusion. But the two justices in the dissent and the two justices in the special concurrence did not believe that, can't reach a different conclusion. In the special concurrence, Justice Burke talked about how if under the pre-amendment version of section 10C a person is entitled to a FOIA card, that does not affect whether or not that person is federally prohibited from owning a firearm. And Justice Tice reached the same conclusion when she wrote in the dissent that a person must first remove the federal disability to obtain a FOIA card before a person would be entitled to a FOIA card. Does it matter in those two separate writings that the writers didn't talk about, talked about future applicants? Not necessarily, the defendant in this case had a FOIA card and then it was revoked. And the, so my question, I have two questions about these two special writings in quorum. First of all, does it matter that they were talking about future applicants as opposed to someone who had their card revoked? And second, does it matter, I know you cite Lampetak, but does Lampetak apply when we're talking about dicta? Wasn't this pure dicta by Carmeier and the other two writers? With regard to the first question of future applicants, I think what the language about future applicants, I think that's relevant actually in this case to the question of whether or not the 2011 or 2013 version of the Act applies. Because what that shows is that you look, is that the version of the statute which applies is the statute that was in effect at the time a person applied for relief from a prior revocation or denial of a FOIA card. So, for example, in section 10C, the four different factors are all based on considerations of present circumstances. The court or the director, whoever is making the decision in that particular case, looks at that person's reputation at that time, whether or not it would be in the public interest to allow that person to obtain a FOIA card at that time. So with regard to speaking about future applicants, I think what that shows is that when someone applies for relief from a prior prohibition from obtaining a FOIA card, the version of section 10C that you look at is the one at the time that the person applied. And really, a section 10C application is somewhat akin to a section 214.1 petition for relief from judgment, where the person is not contesting the original revocation. I mean, in a section 10C analysis, you're not looking at... So you're not, your issue is not with the FOIA card that was issued in 2011? You're not challenging that decision? Nobody has. You're challenging the decision of the 2013 decision to revoke the card? Well, Frederick was seeking relief from the 2013 decision to revoke the card, and then the circuit court granted that relief, and we're appealing from the circuit court order granting that relief. Right, so you're not contesting the 2011. So if you're not contesting what happened in 2011, why is it that what happened in 2013 would not apply retroactively? The statute, in other words, right. Right, okay. So, right, isn't that the revocation is the operative act that we're looking at? Correct. So the statute in effect then was the 2013 statute, right? Correct, I agree. And that's why the 2013 statute is the operative one in determining whether or not Frederick is entitled to relief under section 10C. And that's why the court erred by only looking at the first three factors and not subsection C4, which was in effect at that time, which required that a petitioner establish that granting relief would not be contrary to federal law in order to obtain relief under section 10C. I'm sorry, say that one more time. That's why that would not be in effect? No, it is in effect. Oh, good. I'm sorry, I misheard you. Yes. So that is in effect? Yes. Okay. Yes, Your Honor. And back to Justice Burke's second question regarding the dicta. Even if it is dicta, it was an issue that all four justices, both in the special concurrence and the dissent, spent a fair amount of time discussing. I think they both devoted a full, at least, paragraph to it. And even if it is dicta, you know, judicial dicta is generally to be followed unless it is found to be erroneous. And here, both the special concurrence and the dissent concluded that under the post-amendment version of the act, under 2013, that a person who could not establish that he, or a person who was federally prohibited from obtaining a firearm could not obtain a Floyd card under section 10C4. And that's not, that does not seem to be erroneous because that's plainly what the statute says. That's just kind of a straightforward reading of section C4. And under the Justice Carmeier interpretation, with the first three sections of section 10C eliminating the federal bar, under that reading, that would completely read out section 10C4 because once you made the findings of section, that sections 1, 2, and 3 had been satisfied, then section 4 would automatically be satisfied. And that, therefore then, section 10C4 would be without effect and that would be contrary to the legislative intent that is apparent from the statutory language. Now, you never argued that this Floyd card act was unconstitutional under the second amendment. That issue has not come up. Either at the trial court or here. No, that issue has not come up, Your Honor. And in addition, with the, I believe retroactivity was brought up at one point, a concern about that. A very similar situation was recently resolved by the Illinois Supreme Court in Hayashi versus Illinois Department of Financial and Professional Regulation. That was a physician, right? Right, that was a physician. Yeah, it was a physician, I think, a chiropractor. There were like three different physicians. And in that case, the plaintiffs' medical or healthcare licenses were revoked on the basis of prior convictions. And the Supreme Court in that case held that the operation of that statute, first of all, it applied to those plaintiffs because the statutory language was prospective and because it was prospective, the court held there was no retroactivity problem because a statute does not operate retrospectively merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based on prior law. Well, how is that case not any different than this? I don't think it is any different from this, Your Honor. I think Hayashi is very similar to this case and therefore resolves any retroactivity concerns that anyone may have regarding the operation of Section 10C. So Mr. Corum right now, maybe it's even happened, could have his void card revoked even after all that hoopla going all the way to the Supreme Court the next day after the Supreme Court issues its opinion? The director could have revoked his cover? In theory, yes, because under Section 8, it does say that the department has the authority to revoke someone's void card if that person is not entitled to a void card at that time or at the time of issuance. So theoretically, that would be possible, Your Honor. So anyone that's ever had 10C relief in the past, you guys could go back through the records and just knock them right out of the box with a void card? Possibly. That issue isn't before us in this case because... Well, but the retroactivity of it is. You're arguing that it's retroactive. Well, I'm arguing that the application of 10C is not retroactive because it only affects a person's ability to possess a void card from this point forward. Okay. Whereas a retroactivity... What I'm saying, from this point forward, so the director now, what I'm getting at is, if you're applying the case that you cited from the Supreme Court, from this point on, anyone that's had 10C relief in the past could be revoked? Arguably. The problem, one possible complication with that is that if somebody has already had 10C relief, you would have a circuit court order. You would have some kind of order directing the department to issue a void card. So perhaps that would complicate things. But I believe under the law as it is right now, that your interpretation of Section 10C-4 sounds correct to me. I'm sure the state police are a little busy. I'm sure they're always busy. Anything further? Thank you. You'll have your time to report. Great. Thank you. Ms. Neiman. Neiman. Is it Neiman? Neiman, like Neiman Marcus. Thank you. Good morning, Your Honors. Thank you for your time this morning. I apologize for Mr. Frederick not being here today. His plan was to come. He has come to the proceedings in the past, but he got ill yesterday and was still ill this morning. So that's why he's not here. As far as the road map, what I'd like to do is present this morning, is discuss why the court does have jurisdiction in this matter through subsection 10A and 10C. That would be a 430-ILCS 65-10A and C. I'll refer to it in the future as 10A and 10C if that's okay with Your Honors. And then I will also discuss why this 2011 statute, 2010, should be applied instead of the 2013 amendment. The central issue in this case is the section 10A. In regards to the enumerated list of the certain offenses, the department had argued that when you filed under this section, arguably our petition was under section A, but it also had some of the points as listed in subsection C. So there was a combination of our petition being filed under A and C. Doesn't Miller say that we're supposed to look at the notice that was sent from the director or from the state police to determine the basis for the revocation? Correct. Actually, what the Illinois State Police had sent to my client indicated that he was being denied because of the conviction of battery. It also cited the federal saying battery satisfied 922 and that it was a misdemeanor crime of domestic violence. So those two things were cited. Correct. Well, Miller also tells us that the trial court has subject matter jurisdiction if one of the enumerated offenses is in that letter. That is correct. So one enumerated offense is in that letter. Well, Your Honor, the conviction was for battery, but there is case law that indicates that a person that is charged with domestic battery but did not plead to that specific charge would still fall within the enumerated offense. Right, because it's based upon an enumerated offense. Correct. Miller says that if a person is charged with domestic battery, then it's based upon a domestic battery, which is an enumerated offense. That is correct. So how does that even apply to this? Because here we're talking about battery or misdemeanor crime of domestic violence. Can you repeat that again? How does that even apply? I'm trying to get to the point of the enumerated offense. The reason Miller was decided the way it was is because it looked at the term based upon. Correct? Yes. And because it wasn't a conviction, it was an arrest, but it was still based upon that offense, which is domestic battery, which is an enumerated offense. Correct? Correct. So how does that apply to this situation at all when we don't have an enumerated offense, whether it's a conviction or an arrest? Well, in the Miller case, what they had indicated was even though that nowhere in the statute did the legislature impose the limitation that the aggrieved party must be convicted of one of the enumerated offenses and supposedly merely being charged. And so having been charged of the domestic battery, it's my position that then 10A, my client, or there would be subject matter jurisdiction by the court even though my client fled to the amended charge of battery. But in Miller, the person was revoked  because of an arrest for domestic battery and possession or delivery of controlled substance. Correct? Correct. So in this case, that's not in the notice. Certainly the director could have sent a notice saying you're revoked because of an arrest for domestic battery and then we'd be right in the Miller situation. They didn't do that. They said you are revoked because of a conviction for battery. As I recall in the Miller case, specifically, and I could be wrong, but my understanding was that the Illinois State Police had, because of the indicated for the felony is the reason why they had revoked him, but he had also been charged with a domestic battery. But nowhere in the letter of denial of revocation through the Illinois State Police did the Illinois State Police have the language indicating the domestic battery. Right. But either way, the opinion talked about domestic battery and talked about the felony and both being enumerated offenses. I mean, the felony case was a controlled substance. That was an enumerated offense also. Correct. And even if my client would not fall under subsection A, he would still fall under subsection C. Well, you don't get to C if you don't have subject matter jurisdiction. And you would agree that this is administrative review of a decision by the department, correct? I don't believe my client would have had to go to the Illinois State Police first, but if your honors disagree with that. No, but my question to you was the petition that your client filed, was that in the nature of administrative review of a decision by the department? It was because of the rejection or revocation of my client's FOIA based on the charge of, or even the conviction of the battery. Right, and the only way you get to the trial court is under 10A, or if you went the other way through the director, under 11, correct? Correct. So for subject matter jurisdiction to apply, you have to go either through 10A or 11. One of those two routes. Correct. So if 10A doesn't apply, we don't have jurisdiction. I believe we would have ended up back in court on the same ground because if my client would have gone to the Illinois State Police, did an administrative review, more than likely, since the Illinois State Police has already revoked my client's card, then we would have filed the petition back in circuit court. So we would have still been arguing basically the same thing. So the department issued Mr. Frederick the FOI card in 2011, correct? Yes, April 2011. So that's the decision, you're not challenging that decision, you're challenging the decision of the state police or the department revoking the card that happened in 2013, correct? Correct. What had happened is my client, I believe it should go retroactive back to the date that when he filed his application in 2011, and I believe there was a case law, the Quorum Court had also discussed that at the time that he applied for his FOI privileges that there was no bar to him getting a FOI card back then at that time. But then 2013, the federal law changed and now there is a bar. Why shouldn't the 2013 law apply as it does in the case that your opponent cited here today, Hayashi, where the Supreme Court says that the new law is retroactive? Why would that be the case here? Well, under the other case, I believe there was indicated that it would go retroactive back to... It's not retroactive. You're saying we should apply the 2011 law. Correct. Not that 2013 would be retroactive. I'm asking you why 2013 wouldn't be retroactive when that is the law now. How do you distinguish Hayashi that your opponent just cited? And does Quorum really... Is it in your favor or is it not in your favor based upon the four Justices? I'm not familiar with this Hayashi opinion. I recall that being in the brief, so I don't have knowledge as to that particular case. So I can't fairly answer that question. And what about Quorum? Is that case in your favor or not with respect to what the dissenting Justices and the Justices who specially concurred decided as opposed to the remaining Justices? Well, as far as the Quorum case, they didn't make any specific ruling on the 2013 amendment. That was not an issue that was before the Court, is my understanding. So I don't think that Quorum decision negatively impacts our case here. I also looked at the time that he had applied for his boy card, that there was nothing in the boy card act that prevented the Circuit Court from granting him relief under the Section 10. Well, that's probably the question. If we go under the 2013 version, was the Circuit Court in a position to grant any relief? In the Quorum decision, it was stated that the petitioner would qualify or be in violation, I should say, of the federal statute. And the case also did state that with the federal statute, it should be the federal court that decides whether or not that person would be in violation of federal law, not really the Circuit Court. So I guess Quorum opinion kind of leaves that door open, in my opinion, as to who should make the determination of whether or not there is a violation under the federal law. So in this instance, there was no federal convictions or anything of that nature by Mr. Frederick, so in my opinion, it would not be the Circuit Court that should have to make that determination. So in this case, if you're going under 2011, then does the relief granted, is relief granted contrary to federal law? I don't believe it is, because back then, when that law applied, you could interact Section 8N along with Section 10, and then they interplayed together. But if we impose a 2013 version, the relief would be contrary to federal law, correct? Possibly. I don't think there's been any case law that's really made that determination yet. Possibly? Well, you have a statute with 8N out here. How about the General Assembly's amendment to Section 10, the FOIC card act? However, the court shall not issue the order if the petitioner is otherwise prohibited from obtaining, possessing, or using a firearm under federal law. Isn't federal law clear? It incorporates the same Section 8N, and it just puts it in the statute. So I'm not sure 8N is still out there, but then you still have Section 10 with C4 with the added language in it. Well, the wording is really a little different, though, isn't it? In B, the sentence is, courts shall not issue the order if the petitioner is otherwise prohibited from obtaining, possessing, or using a firearm under federal law. That's pretty specific. We can look to a federal law and see if that's the case. The wording in C4 is different. It's granting relief would not be contrary to federal law. So it really isn't identical, is it? It is not. There are two different sections. I guess what I was referring to is I think that 8N is a little bit more on the lines of the C4. And I guess that's what I'm suggesting, but maybe it isn't. But anyway. Okay. Okay. You know, I'm going to ask you a question that I asked your counsel for the Attorney General's Office because I was a little thrown off here this morning. But in the trial court, you never argued that the Foy Card Act was unconstitutional and you never argued that in your motions either, did you? Correct. We did not. There was not a constitutional issue. Do you have anything further? No. I just ask that the court affirm the Circuit Court's ruling. Thank you. Thank you. Mr. Biscat. Very briefly, Your Honor. I just want to address the jurisdictional issue once more. You know, since you bring that up, isn't that, isn't the state trying to have it both ways on the jurisdictional argument? I mean, you're arguing that Mr. Frederick's conviction is for a crime of domestic violence under federal law, but then turning around and arguing that he can't appeal directly to the Circuit Court because it wasn't a domestic battery. Well, the distinction between battery under state law and whether or not it also qualifies as a crime of domestic, misdemeanor crime of domestic violence under federal law would go toward the more substantive issue of whether or not, of whether or not Frederick is federally prohibited from owning or possessing a firearm because that would go to the issue of whether or not his battery conviction under state law is sufficient to establish that he's prohibited under a federal law, whereas for the jurisdictional argument, that is purely based on what was the basis for the revocation and whether the basis for the revocation, the stated basis, was one of those enumerated offenses. I see. And here the enumerated offense was battery and not domestic battery. And as the court, the United States Supreme Court has pointed out, the state definition of what constitutes a battery under state law may fall within the more encompassing definition of misdemeanor crime and domestic violence under federal law. So there really isn't a disconnect there. It's a more inclusive definition under federal law that includes simple battery. And that was actually kind of the point I was going to make unless any of the other comments have any further questions. If the stated basis in this case was his arrest for domestic battery it would fall directly under Miller and there'd be 10A jurisdiction. Yes, but here the basis was his conviction for misdemeanor battery. Are we splitting hairs? No, Your Honor, because it's just what the because in Miller, for example, the reason they looked at the charge rather than the conviction is because the department was basing the revocation or denial of this void card upon the charge. Whereas here the department based it just upon the conviction itself which was for misdemeanor battery and it's a specified list of offenses in section 10A. But the substance of the crime that he pled guilty to was battery. The fact that there were underlying facts which satisfy the definition of a domestic relationship under federal law because he had previously cohabitated with the victim as someone in the same situation as the spouse. So the domestic battery definition suits you for the federal law but doesn't suit you for jurisdiction. Well there are different definitions is what I'm trying to get at. There isn't sort of a general idea of something is always domestic battery or always battery. We have two different jurisdictions. We have Illinois which is defining battery in this way and that is what he pled guilty to and the federal jurisdiction is defining misdemeanor crime of domestic violence in a certain way that includes state convictions of battery that may not otherwise qualify under state laws as domestic battery based upon the underlying facts. Would you agree that the petition filed by the defendant in this trial court was requesting administrative review of a decision by either the director or the department? Yes, they will receive some relief from the department's decision. Is that administrative review? Yes, Your Honor. I have nothing further if Your Honor. Thank you. Thank you. Counsel, both, thank you so much for your professional arguments. We appreciate all the time that you put into this today. The decision will be rendered in due course. The court is now in recess before our next case. Thank you.